The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. The Full Commission therefore rejects and reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. The parties have been correctly designated, and there is no question as to misjoinder and non joinder of parties.
3. The parties are subject to and bound by the Act.
4. Plaintiff was an employee of defendant on April 19, 1995.
5. Plaintiffs average weekly wage is $457.72.
6. Plaintiff was disabled from any employment from April 20, 1995 through September 30, 1995.
7. The parties stipulated into evidence a packet of plaintiffs medical records. Furthermore, in lieu of taking Dr. Winfields deposition, the parties stipulated on May 1, 1997 that in Dr. Winfields opinion the condition of the partial tear of the anterior cruciate ligament and posterior horn tear of the medial meniscus of plaintiffs right knee could have been caused when plaintiff squatted or kneeled on April 20, 1995.
 *********** EVIDENTIARY RULING
The Full Commission rules that Ms. Sue Franklin is not a proper expert witness to testify regarding matters concerning the North Carolina State Retirement System as she is not employed there nor has she been an employee in the past. She has no special knowledge regarding the retirement system. Further, the Full Commission takes judicial notice of the fact that the state of North Carolina contributes to short-term disability benefits for state employees solely and without financial contribution by the employees of the state.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On April 19, 1995, the date of plaintiffs alleged injury by accident, plaintiff was forty-eight years old and had been employed with defendant since age eighteen. She was employed as a certified nursing assistant or CNA on first shift. Plaintiff worked in the geriatric ward where patients require full care including brushing their teeth, feeding them, bathing them and dressing them.
2. On April 19, 1995, plaintiff had finished feeding the patients and was putting them to bed. She was working with a particular patient who had not had a regular meal at lunchtime because a naso-gastric tube or feeding tube had been inserted recently in the past couple of days. The patient had had a great deal of pain and trouble with the tube and had become quite aggressive. In fact, the patient had to be restrained. Dealing with this patient since the insertion of the feeding tube was fairly new to plaintiff.
3. On that particular day, plaintiff was helped by a co-worker, Eula Horne who was sick with emphysema. Ms. Horne and plaintiff untied the patients hands, which had been tied to the "geri-chair to prevent the patient from removing the newly placed feeding tube. Plaintiff attempted to hold the patients hands as plaintiff and Ms. Horne lifted the patient onto the bed. In order to keep the patients right dominant hand restrained, plaintiff had to quickly run around the bed to restrain the hand. Ms. Horne could not do this because of her emphysema. The patient was jerking her arm aggressively and tried to scratch plaintiff and Ms. Horne. It was important for plaintiff to restrain the patient to protect the feeding tube.
4. In order to restrain the patient, plaintiff had to grasp the restraint strap, which was around the patients wrist and tie it underneath the mattress to the bed railing. Tying the restraint to the bed involved threading the restraint through a slot. Plaintiff had difficulty threading the restraint through the slot. Plaintiff tried to bend to the right and then to the left but just could not see the slot, which is under the mattress. Furthermore, there was so little space as the room had been rearranged and plaintiff had no room to squat in her normal manner. There was normally two to three feet between the beds but this day there was not. This was the first time plaintiff had attempted a transfer of this patient with this particular configuration of the beds.
5. Because the patient was so aggressive and plaintiff was busy and in a hurry, without room to squat, plaintiff bent straight down on her right knee with her shoe under her buttocks in a hyper-flexed position. She was unable to use her hands to support herself. This was not the way that plaintiff would normally squat or bend down but was necessitated by the unusual circumstances on that day including the situation with the patient as well as the fact that the room had been rearranged.
6. When plaintiffs knee hit the floor she heard it pop. She was in immediate pain and experienced swelling. Plaintiff tried to continue working but was unable to finish her last round of the day. Plaintiff reported the incident to her supervisor, Linda Wright, that day and later spoke to Sue Franklin, the workers compensation personnel officer, on approximately April 24, 1995. Although Ms. Franklin discussed with plaintiff whether there had been an "accident or a "specific traumatic incident, Ms. Franklin did not define these terms and plaintiff did not understand the legal significance of the terms.
7. The next day, April 20, 1995, plaintiff could not even dress herself because of her knee problems so she made an appointment with her physician. Plaintiff did not want to be seen in defendants employee health service because of an unpleasant past experience. That day, April 20, 1995, she went to her private physician who diagnosed her with a knee sprain. Ultimately, the nature of her knee condition was diagnosed as chondramalacia of the patella.
8. Subsequently, plaintiffs condition required surgery by Dr. Winfield on July 25, 1995, which revealed a partial tear of the anterior cruciate ligament and posterior horn tear of the medial meniscus of the right knee. Thereafter, she improved and was released to return to work and did actually return to work at her same or greater wages on October 1, 1995.
9. Plaintiff was examined on April 7, 1997 by Dr. John DePerczel who indicated that plaintiffs right knee showed signs of significant trauma. In particular this was seen in contrasting plaintiffs right knee with her left knee. According to Dr. DePerczel, plaintiff will need future medical treatment possibly including an arthroscopy. In fact, plaintiff may even require a total knee replacement in the future. Furthermore, Dr. DePerczel indicated that the incident, which occurred on April 19, 1995 was the cause of plaintiffs knee condition and that plaintiff sustained a permanent partial impairment of twenty percent (20%) to her right knee.
10. Dr. Winfields opinion is that the condition of the partial tear of the anterior cruciate ligament and posterior horn tear of the medial meniscus of the right knee could have been caused when plaintiff squatted or kneeled on April 19, 1995. Dr. Winfield has not assigned a permanent partial impairment rating.
11. Linda Wright and Gwen Aldridge, the registered nurse supervisors of plaintiff, each testified at the hearing before the Deputy Commissioner that the units beds were not close together or in unusual positions. However, plaintiffs testimony is given greater weight.
12. Plaintiff was incapable of earning any wages in any employment from April 20, 1995 through September 30, 1995.
13. Plaintiffs average weekly wage is $457.72 yielding a weekly compensation rate of $305.15.
14. On June 19, 1995, plaintiff began receiving short-term disability benefits from defendant and received benefits through September 30, 1995 in the amount of $3,266.64. This is a benefit supplied solely by defendant without financial contribution by plaintiff. As plaintiffs claim was denied by defendant, these benefits were not due and payable when made.
15. Due to the unusual nature of the totality of the circumstances, plaintiff suffered an interruption of her usual work routine on April 19, 1995 constituting an injury by accident when she injured her right knee while in an awkward position necessitated by the circumstances that day.
16. Plaintiffs right knee condition including her knee surgery on July 25, 1995 is causally related to her injury by accident of April 20, 1995. Furthermore, plaintiff sustained a permanent partial impairment of twenty percent (20%) to her right knee.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On April 19, 1995, plaintiff suffered an interruption of her normal work routine when unusual circumstances were introduced constituting an injury by accident when she injured her right knee while in an awkward position necessitated by the unusual circumstances that day. N.C.G.S. 97-2(6).
2. As a result of her injury by accident, plaintiff is entitled to temporary total disability benefits from April 20, 1995 through September 30, 1995 at a weekly compensation rate of $305.15, subject to a reasonable attorneys fee and defendants credit. N.C.G.S. 97-29.
3. As a result of her injury by accident, plaintiff is entitled to permanent partial disability for the twenty percent (20%) rating to her right knee in the amount of 40 weeks at a weekly compensation rate of $305.15, subject to a reasonable attorneys fee and defendants credit. N.C.G.S. 97-31(15).
4. Subject to the limitations of N.C.G.S. 97-25.1, plaintiff is entitled to reasonably necessary medical expenses for treatment related to her right knee injury, which tends to effect a cure, provide relief or lessen the period of disability. N.C.G.S.97-25.1 and 97-25.
5. Defendant is entitled to a credit for short-term disability benefits received by plaintiff from June 19, 1995 through September 30, 1995 in the amount of $3,266.64. N.C.G.S. 97-42.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability benefits to plaintiff from April 20, 1995 through September 30, 1995 at a weekly compensation rate of $305.15. As this amount has accrued, it shall be paid in a lump sum subject to a reasonable attorneys fee and defendants credit. N.C.G.S. 97-29.
2. Defendant shall pay permanent partial disability to plaintiff for the twenty percent (20%) rating to her right knee in the amount of 40 weeks at a weekly compensation rate of $305.15 subject to a reasonable attorneys fee and defendants credit. As this amount has accrued, it shall be paid in a lump sum subject to a reasonable attorneys fee and defendants credit. N.C.G.S.97-31(15).
3. Subject to the limitations of N.C.G.S. 97-25.1, defendant shall pay plaintiffs reasonably necessary medical expenses for treatment related to her right knee injury, which tends to effect a cure, provide relief or lessen the period of disability. N.C.G.S.97-25.1 and 97-25.
4. A reasonable attorneys fee in the amount of twenty-five percent (25%) is hereby approved for plaintiffs attorney to be deducted from the lump sum Award and paid directly to plaintiffs attorney.
5. Defendant shall pay the costs due this Commission.
This the ___ day of August 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER